FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y

★ MAR 2 1 2011 ★

BROOKLYN OFFICE

C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                       :

JASON DENT,                   :

                       :

           Petitioner,    :     **MEMORANDUM**

                       :     **DECISION AND ORDER**

      -against-         :

                       :     09 Civ. 1938 (BMC)

UNITED STATES OF AMERICA,    :

                       :

          Respondent.   :

                       :
------------------------------------------------------- X
                       :

UNITED STATES OF AMERICA,    :

                       :     01 Cr. 1343 (BMC)

         Plaintiff,     :

                       :

      -against-         :

                       :

JASON DENT,               :

                       :

         Defendant.   :

                       :
-------------------------------------------------------X

**COGAN,** District Judge.

     This decision and order consolidates and rules upon motions and a petition in two proceedings: post-judgment motions in petitioner's criminal case and a habeas corpus petition pursuant to 28 U.S.C. § 2255.

     After a jury trial, petitioner was convicted of (1) conspiracy to distribute crack cocaine; (2) engaging in a narcotics conspiracy resulting in murder; (3) engaging in a narcotics conspiracy while engaging in a conspiracy to commit murder; (4) using a firearm in relation to a drug trafficking offense and during a crime of violence; and (5) unlawful use of a firearm causing

death. Judge David Trager, who presided over the trial, sentenced petitioner to a total of 480 months' imprisonment.

The facts of the case are fully set forth in the Second Circuit's decision affirming petitioner's conviction, see United States v. Desinor, 525 F.3d 193 (2d Cir. 2008), and thus will not be repeated here at length. Briefly, petitioner was the leader of a violent gang (some of the other members were co-defendants) known as the "Cream Team," which sold crack cocaine in a housing project in Brooklyn. The murder-related charges against petitioner arose out of the shooting of Ramel Flowers, who was the cousin of Kijuanne Thompson (known as "Yanni"), a rival gang leader. The shooters were two Cream Team members, Jason Jones and Naequan Clarke, who became cooperating witnesses. Jones testified that petitioner had instructed them to shoot Yanni or anyone else in the rival gang. Clarke testified that petitioner used the euphemism that they should "light up building two," the building where Yanni's crew was based. Another member of the Cream Team and members of Flowers' family also testified that petitioner himself had shot at Flowers earlier the same day (petitioner missed).

Among the difficulties in analyzing petitioner's claims, beyond the multiple filings and overlapping motions, is that almost every point of error is raised in conclusory terms, without any logical presentation that could lead the Court to understand, let alone accept, petitioner's conclusions. In most instances, there are quotations from or references to the trial transcript, exhibits, or other documents, but it is not possible to make the connection between petitioner's conclusions and the allegedly supporting references. The Government appears to have the same problem, as its opposition is not of much assistance in understanding what petitioner is trying to say, other than correctly pointing out that if the Court cannot discern the point petitioner is trying to make, then there can be no basis for relief. See United States v. Malcolm, 432 F.2d 809, 812

2

(2d Cir. 1970). I have nevertheless undertaken to compare the record to the points raised and try to make some sense of petitioner's claims.

Each of the claims is discussed below, with additional facts as are necessary to address the claim. None of them have merit, and the motions and petition are therefore denied.

## I.     Post-Judgment Motions in the Criminal Case

### A. Motion for a New Trial [201]

This motion is based on "newly discovered evidence." Pursuant to a Freedom of Information Act request, petitioner apparently obtained eight FBI reports that he believes were not part of the 3500 material he received at trial. He also references the guilty plea minutes of Jones and Clarke and NYPD Detective reports. Finally, petitioner alleges that he has "newly discovered" that Government witnesses committed perjury and that the Government planted evidence.

The motion must be denied. Under Federal Rule of Criminal Procedure 33(b)(1), a defendant moving for a new trial must file his motion "within 3 years after the verdict or finding of guilty." The jury returned its verdict on December 8, 2003; the motion was filed on August 6, 2008.

Beyond the timeliness problem, I can discern no merit to the motion. Petitioner simply does not explain how the FBI or NYPD reports bear on the verdict entered against him. He makes a conclusory allegation that a piece of evidence, a notebook, was planted, but his references to grand jury testimony do not in any way support his argument. He has not come close to demonstrating the basis for a new trial.

## B. Petition for a Writ of Error *Coram Nobis* [203]

In this motion, petitioner seeks to set aside the $45,000 restitution obligation that Judge Trager imposed on the ground that he did not impose it on petitioner's co-defendant who had the same responsibility towards the victim. Putting aside the fact that this claim is not properly brought under *coram nobis*, see Fleming v. United States, 146 F.3d 88, 89-90 (2d Cir. 1998), and thus should have been raised in his habeas corpus petition, the Second Circuit has clearly held that sentencing disparity between co-defendants as to restitution, standing alone, is not grounds for relieving a defendant of his restitution obligation. See United States v. Newsom, 399 F. App'x 625 (2d Cir. Nov. 2, 2010) (summary order). Defendant has offered nothing more than the fact that he has to pay restitution and his co-defendant does not; the motion is therefore denied.

## C. Reduction of Sentence [204]

Petitioner contends that by reason of the amendment to the Sentencing Guidelines that reduced the base offense level for most crack cocaine offenses, he is entitled to be resentenced or have his sentence reduced. The amendment, however, does not affect petitioner's Guideline range. His Guideline range was life imprisonment based on a total offense level of 47 (Judge Trager sentenced him below the Guideline range). Using a current Guidelines calculation, petitioner would still have an offense level of 47 and a Guideline range of life imprisonment.

The applicable statute and the Guidelines preclude a resentencing in this situation. Under 18 U.S.C. § 3582(c)(2), a reduction based on an amendment to the Guidelines is permitted only when "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Guideline §1B1.10(a)(2)(B), in turn, does not allow a reduction in sentence if the amendment "does not have the effect of lowering the defendant's applicable guideline range."

4

The Second Circuit has confirmed the obvious point that if the amendment is immaterial to the Guideline range, there is no basis for reducing the sentence. <u>See</u> <u>United States v. Mitchell</u>, 122 F. App'x 539, 541 (2d Cir. 2005) (summary order).

### D. Motion for Reconsideration [225]

In this misnamed motion, the only relief petitioner seeks is copies of Jones' and Clarke's guilty plea transcripts "so [he] can prepare for his 2255 motion." As noted in the discussion of his habeas corpus proceeding below, petitioner's counsel was provided with these transcripts prior to Jones' and Clarke's trial testimony. In any event, he identifies no provision of the Federal Rules of Criminal Procedure that would allow him to obtain documents in his criminal case for assistance in making his §2255 case. Any such request would circumvent Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts, which sets the standard for obtaining discovery in §2255 cases. The motion is therefore denied.[1]

## II.    The Habeas Corpus Petition

### A. Ineffective Assistance Claims

Under <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984), counsel is ineffective if his or her actions were objectively unreasonable and there is a reasonable probability that but for counsel's errors the factfinder would have possessed reasonable doubt as to petitioner's guilt. Petitioner first claims that his counsel should have interviewed a woman named Lourdes Martinez, a witness to the first, non-fatal shooting directed at Flowers allegedly committed by petitioner. The police interviewed Martinez, and she failed to identify petitioner in

---

[1] There are letters on the criminal docket in which petitioner seeks the same or similar documents that he says he needs to support his §2255 petition. Although not designated as motions, those requests are also denied for the same reason.

a photographic array. Because the Government argued that petitioner's unsuccessful shot at Flowers evidenced the conspiracy to commit murder, petitioner claims that counsel's failure to offer Martinez's testimony – which suggests that petitioner did not shoot at Flowers – rises to the level of ineffective assistance.

Even assuming that counsel's failure to offer Martinez's testimony was objectively unreasonable, I cannot say that the failure was sufficiently prejudicial. The Government presented additional evidence, separate from the first shooting, showing that petitioner conspired to commit murder. Specifically, Jones and Clarke both testified that petitioner instructed them to murder Yanni or members of Yanni's crew. As the Second Circuit recognized on petitioner's direct appeal, the conspiracy to commit murder aspect of the case concerned the larger conspiracy to murder Yanni and members of his crew; it was not solely focused on Flowers' murder. See Desinor, 525 F.3d at 203. Thus, the mere fact that a witness to the earlier attempt on Flowers' life could not identify petitioner as the shooter is not enough to call into question the jury's guilty verdict. See Strouse v. Leonardo, 928 F.2d 548, 556 (2d Cir. 1991). This is especially true because any error on the part of counsel by failing to interview Martinez would not have impacted his ability to effectively cross-examine Jones or Clark regarding the instructions they received from petitioner. See Lindstadt v. Keane, 239 F.3d 191, 204-05 (2d Cir. 2001).

Petitioner also argues that his counsel was ineffective for failing to interview Kiana Jones. A third party told a police officer that petitioner "did not do it" because he was with Kiana in the front of the building. It appears from petitioner's reply that this statement refers to the actual killing of Flowers, not the first, unsuccessful shooting. Petitioner fails to show prejudice because he was never alleged to have been present at the actual occurrence of the

murder. It was carried out by others at his direction. The fact that a witness could provide petitioner with an alibi for the time of the murder therefore had no bearing on his case.

Additionally, petitioner argues that the police investigated other individuals regarding Flowers' murder, including Suave, a member of Yanni's crew. Petitioner contends that his counsel's failure to interview Suave made the jury believe that the police only investigated members of the Cream Team. It is unclear whether the police ever identified Suave as a suspect in Flowers' murder; petitioner only supplies a notation indicating that Suave had a "beef" with Yanni. Even assuming the police did investigate Suave for Flowers' murder, petitioner has failed to demonstrate objective unreasonableness or prejudice because Jones and Clarke, members of the Cream Team, admitted to murdering Flowers.

Petitioner next argues that his counsel failed to obtain certain documents that would have contradicted various points to which the witnesses testified at trial. He has failed to make any showing that there was any contradiction, let alone a material one. Accordingly, petitioner has failed to demonstrate objective unreasonableness or prejudice.

His next contention is that his counsel should have moved to suppress evidence seized pursuant to a search warrant. According to him, the search warrant was for firearms and ammunition, not documents, but the police seized and did not voucher two photo albums. He does not say that the photo albums were used in evidence, how they were prejudicial to him, or whether there were any other circumstances that would have allowed the police to seize them. He has not met his burden to show either objective unreasonableness or prejudice from the lack of a motion to suppress.

Petitioner also claims that his counsel failed to object to evidence introduced at trial of uncharged murders allegedly committed by members of the Cream Team. Counsel for the

7

Government and the individual defendants raised this issue before Judge Trager prior to delivering their opening statements. At the time, Judge Trager suggested that the Government should not inquire into uncharged murders; however, he also said that he was going to deal with these issues on a "piece by piece basis" as they arose at trial. The Government indicated that it understood and that it would not inquire about uncharged murders. Nevertheless, the Government asked a witness about uncharged murders, and petitioner's counsel did not object.

Assuming counsel's failure to object was objectively unreasonable, petitioner has failed to demonstrate prejudice. First, petitioner only points to two instances where the Government actually elicited testimony regarding uncharged murders, and only one of those instances involved petitioner specifically. Second, and more importantly, during the jury charge, Judge Trager informed the jury of the limited purpose for which it could rely on the evidence of uncharged crimes – only to establish "the relationship among the defendants." Judge Trager's instruction properly cured any potential prejudice resulting from the testimony. See United States v. Downing, 297 F.3d 52, 59 (2d Cir. 2002) ("Absent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions.").

Petitioner's next point is that his attorney did not oppose the Government's motion to protect the identities of non-testifying confidential informants. There is no showing, however, that the informants had any exculpatory or otherwise material information relating to petitioner. In the absence of such a showing, I cannot find that petitioner's trial counsel did anything that was objectively unreasonable or prejudicial to him. Petitioner has articulated no basis on which an objection to the Government's motion could or would have been sustained beyond stating in a conclusory manner that the informants would have impeached Government witnesses.

## B. Evidentiary Errors and Prosecutorial Misconduct

Virtually all of these claims relate to alleged evidentiary errors by Judge Trager or instances of what petitioner calls prosecutorial misconduct (but which actually appear to be, for the most part, alleged evidentiary errors). These claims consist of: (a) the improper admission of evidence of other crimes, including murder; (b) the improper admission of certain letters and books; (c) the planting of guns by the Government and then their introduction into evidence; (d) the use of a notebook, which petitioner describes as "tainted evidence"; (e) improper vouching of witnesses because the prosecutor told the jury at trial that the Government's witnesses were telling the truth; (f) Jones gave false testimony at trial; (g) one of the Detectives gave false testimony to the grand jury; (h) the Court admitted evidence that petitioner had previously been convicted of a gun crime; (i) the Government violated its obligations under the Jencks Act, 18 U.S.C. § 3500, and Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963); and (j) another Detective gave false testimony at trial.

Given petitioner's *pro se* status, I have attempted to discern whether there might be any merit at all to the claims despite his inability to present them effectively. I can find none. Many of them are procedurally barred because they could have been, but were not, raised on direct appeal. These claims consist of (a), (b), (e), and (h) as listed above. To avoid the procedural bar, petitioner alleges "cause" and "prejudice," see Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998), consisting of the ineffectiveness of his counsel.[2] However, since I have already

---

[2] Petitioner also makes an "actual innocence" claim as a ground for avoiding the procedural bar. This claim appears to be based on his assertion that the murder of Flowers and the conspiracy to murder Yanni and members of his crew were unrelated to the drug conspiracy. Petitioner raised, and the Second Circuit rejected, this argument on direct appeal. See Desinor, 525 F.3d at 202-03. It cannot therefore serve as the basis for a §2255 motion. See United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009).

rejected petitioner's claim of ineffective assistance of counsel, he has failed to demonstrate grounds for overcoming the procedural bar.

As to the other claims, they are without exception either stated in conclusory or disconnected terms, or they are demonstrably without merit. For example, a recurrent complaint that petitioner has is that the Government failed to turn over Jones' full criminal rap sheet and Jones' and Clarke's plea allocutions, thereby violating his rights under Brady and the Jencks Act, 18 U.S.C. § 3500. Petitioner has made no showing that Jones' criminal rap sheet is exculpatory aside from his conclusory assertion that Jones was convicted of a crime in 1997 and cooperated with the authorities against petitioner and others. With regards to the plea allocutions, petitioner annexed (to his *coram nobis* petition) a letter from the Government to petitioner's attorney, dated November 13, 2003, stating:

> This letter is to memorialize that the government provided you with the plea minutes for Jason Jones on the morning of November 11, 2003 prior to his testimony. . . . Enclosed are the plea minutes of . . . Naequan Clarke as well as a proffer agreement signed by Naequan Clarke . . . .

There was thus no Brady or Jencks violation.

Similarly, petitioner contends that Detective Milani "committed perjury under oath" because in his police report, he referred to two notebooks being vouchered, but in fact there was one that was not vouchered. The portion of Detective Milani's direct testimony that petitioner quotes, however, fully explains the inconsistency – the Detective acknowledged on direct testimony that he made an error. It was for the jury to determine whether to believe him or not, and it is not for this Court to now second guess the jury's determination. See United States v. Rea, 958 F.2d 1206, 1221-22 (2d Cir. 1992). All of petitioner's other claims are similarly without merit.

## C. Resentencing

Petitioner contends that Judge Trager improperly sentenced him to 120 months consecutive on his firearm conviction in violation of United States v. Williams, 558 F.3d 166 (2d Cir. 2009), vacated, 131 S. Ct. 632 (2010). Williams, however, was expressly abrogated by the Supreme Court's decision in Abbott v. United States, 131 S. Ct. 18 (2010). See also United States v. Tejada, 631 F.3d 614, 616, 619 (2d Cir. 2011). Judge Trager's sentence was therefore correct. In any event, the sentencing transcript makes it clear that Judge Trager was very deliberate in sentencing petitioner to a total of 40 years, substantially below the Guideline range.

## D. Right to Confront Witnesses

Petitioner argues that his Sixth Amendment right to confront the witnesses against him was violated when a Government witness read two letters petitioner claims were written by non-testifying confidential informants. The trial transcript shows, however, that the letters in question were actually written by petitioner and sent to a third party. Petitioner's Sixth Amendment right to confrontation was therefore not implicated.

## E. Pending Motions

The following motions are still pending in petitioner's §2255 proceeding: (1) petitioner's amended evidentiary motion; (2) petitioner's motion for default judgment; (3) petitioner's motion to amend his §2255 petition; (4) petitioner's motion for an evidentiary hearing; and (5) petitioner's motion for leave to expand the record. Petitioner's two motions for an evidentiary hearing [11] [23] are denied because, as shown above, "the motion and the files and records of the case conclusively show that [petitioner] is entitled to no relief." 28 U.S.C. § 2255(b). Petitioner's [13] motion for a default judgment is denied because the Government has since

11

submitted its response and because I have found petitioner's claims to be without merit. <u>See</u>
<u>Bermudez v. Reid</u>, 733 F.2d 18, 21-22 (2d Cir. 1984). Petitioner's [21] motion to amend his
petition and [25] motion for leave to expand the record are terminated as moot as I have
considered the materials annexed to the motions in reaching this decision.

## CONCLUSION

Petitioner's motions and petition are denied and case number 09-cv-1938 is dismissed.
Petitioner has failed to make a substantial showing of the denial of a constitutional right.
Therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253. Further, this Court
certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken
in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.
<u>Coppedge v. United States</u>, 369 U.S. 438, 444-45, 82 S. Ct. 917 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      March 18, 2011